IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DIALYSIS ACCESS CENTER, PLLC, et. als,.

Plaintiff,

v.

RMS LIFELINE, INC.,

Defendant.

CIVIL NO. 13-1796 (PAD)

## REPORT AND RECOMMENDATION

## INTRODUCTION

Plaintiffs Dialysis Access Center ("DAC"), Dr. Justo González-Trápaga ("Dr. González") and his wife Nancy Roig-Flores ("Mrs. Roig", collectively, "Plaintiffs") bring forth this petition to vacate an arbitration award ("Award") entered in favor of Defendant herein, RMS Lifeline, Inc. ("RMS") on July 23, 2013.   This challenge is the latest in a long battle between the parties over services rendered pursuant to an agreement to develop, build, and operate a center for renal disease patients in Mayagüez, Puerto Rico. After submitting their claims to arbitration, the arbitrator found in favor of RMS and against Plaintiffs, who now bring forth the present petition to vacate that award. (Docket Nos. 1 and 21).[1]

After extensive briefing by the parties, on April 20, 2017, the presiding District Judge referred Plaintiffs' "Complaint to Vacate and/or Modify Arbitration Award"

---

1 The Court takes this opportunity to mention the voluminous nature of the documents submitted by Plaintiffs in support of their claims.   Plaintiffs' initial Complaint consisted of 44 pages (and 15 exhibits), and their Brief in Support of the Complaint to Vacate consisted of 73 pages (and 50 exhibits).   While the Court commends Plaintiffs' advocates for the thoroughness of their work and their zealousness in defending their clients, it finds that the sheer amount of paperwork submitted is excessive in light of the claims presented.

(Docket No. 1) and the "Brief in Support of Plaintiffs' Complaint to Vacate and/or Modify the Arbitration Award" (Docket No. 21) to the undersigned for a Report and Recommendation. (Docket No. 36).

For the reasons explained herein, the Court recommends that Plaintiffs' "Complaint to Vacate and/or Modify Arbitration Award" (Docket No. 1) and the "Brief in Support of Plaintiffs' Complaint to Vacate and/or Modify the Arbitration Award" (Docket No. 21) be DENIED, and the arbitration award be AFFIRMED.

## STANDARD OF REVIEW FOR AN ARBITRATION AWARD

It is well established that a federal court's review of an arbitrator's decision is extraordinarily deferential. See Keebler Co. v. Truck Drivers, Local 170, 247 F.3d 8, 10 (1st Cir. 2001); Wheelabrator Envirotech v. Massachusetts Laborers Dist. Council Local 1144, 88 F.3d 40, 43 (1st Cir. 1996); Service Employees Int'l Union v. Local 1199 N.E., 70 F.3d 647, 651 (1st Cir. 1995); Dorado Beach Hotel Corp. v. Unión de Trabajadores de la Industria Gastronómica de Puerto Rico, 811 F.Supp. 41, 44 (D.P.R. 1993). "It is a firm principle of federal labor law that where parties agree to submit a dispute to binding arbitration, absent unusual circumstances, they are bound by the outcome of said proceedings." Posadas de Puerto Rico Assocs., Inc. v. Asociacion de Empleados de Casino de Puerto Rico, 821 F.2d 60, 61 (1st Cir. 1987) (citing United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)).

A court may not overrule an arbitrator's decision merely because its interpretation

is different from the arbitrator's.    United Steelworkers of America, 363 U.S. at 599;

Boston Med. Ctr. v. Serv. Employees Int'l Union, 260 F.3d 16, 21 n.4 (1st Cir. 2001);

Dorado Beach Hotel Corp. v. Unión de Trabajadores de la Industria Gastronómica de

Puerto Rico, 959 F.2d 2, 4 (1st Cir. 1992) ("So far as the arbitrator's decision concerns

construction of the [Collective Bargaining Agreement], the courts have no business

overruling him because their interpretation of the contract is different from his").

Furthermore, the Court may not set aside the award even if it was convinced that the

arbitrator committed a serious error of fact or law.    UMass Mem'l Med. Ctr., Inc. v.

United Food & Commercial Workers Union, Local 1445, 527 F.3d 1, 5 (1st Cir. 2008),

(citing Cytyc Corp. v. DEKA Prods. Ltd. P'ship, 439 F.3d 27, 32 (1st Cir. 2006)).    If the

arbitrator is "even arguably construing or applying the contract" and is acting within the

scope of his authority, a court may not overturn the decision even though it may be

convinced that the arbitrator committed a serious error.    United Paperworkers Intern.

Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 371 (1987); Providence

Journal v. Providence Newspaper Guild, 271 F.3d 16, 20 (1st Cir. 2001).

Additionally, if the agreement taken in context with the surrounding

circumstances is susceptible to different meanings, a reviewing court may not meddle in

the arbitrator's choice between two permissible interpretations, because if a reviewing

court had the final say on the merits of an arbitrator's award, the federal policy of settling

labor disputes by arbitration would be undermined.    United Steelworkers, 363 U.S. at

596, 80 S.Ct. at 1360; Posadas de Puerto Rico, 821 F.2d at 61.

It is important to note that the arbitrator's role is to resolve disputes, based on relevant evidence, once parties to a dispute have had a full opportunity to present their cases, for the arbitrator is the judge of admissibility and relevancy of evidence submitted in arbitration proceedings. Then again, judicial deference to arbitration does not grant *carte blanche* approval to any decision of the arbitrator, but courts are precluded from interfering with arbitration awards for mere errors in assessing credibility of witnesses, and an arbitrator's resolution of credibility issues does not constitute grounds for vacating the arbitration award. International Broth. of Firemen & Oilers, Local 261 v. Great Northern Paper Co., 765 F.2d 295 (1st Cir. 1985). Thus, in the absence of *exceptional* circumstances, a court may not overturn an award based on the arbitrator's determination of relevancy or persuasiveness of evidence submitted by the parties.

Exceptions to the general rule that courts are not to review the merits of an arbitration award are rare. Challenger Caribbean Corp. v. Union General de Trabajadores de Puerto Rico, 903 F.2d 857, 861 (1st Cir. 1990). Only in a few exceptional circumstances does the law authorize vacatur of an award, like for example: "in cases of specified misconduct or misbehavior on the arbitrators' part, actions in excess of arbitral powers, or failures to consummate the award." Advest, Inc., v. McCarthy, 914 F.2d 6, 8 (1st Cir. 1990); 9 U.S.C. § 10a. Apart from section 10, a successful challenge to an arbitration award depends upon the challenger's ability to show that the award is: (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based

on a crucial assumption that is concededly a non-fact.   <u>Advest, Inc.,</u> , 914 F.2d at 8-9 (<i>quoting</i> <u>Local 1445, United Food & Commercial Workers v. Stop & Shop Cos</u>., 776 F.2d 19, 21 (1st Cir. 1985)).   The First Circuit has referred to this non-statutory standard of review as "manifest disregard of the law", meaning "where it is clear from the record that the arbitrator recognized the applicable law-and then ignored it."   <u>McCarthy v. Citigroup Glob. Markets Inc.</u>, 463 F.3d 87, 91-92 (1st Cir. 2006).

## PROCEDURAL BACKGROUND

### A.  The Parties and the First District Court Case.

Plaintiff DAC is a Puerto Rico professional limited liability corporation located in Mayagüez, Puerto Rico that provides certain vascular intervention and access services to patients with kidney-related medical conditions.    Co-Plaintiff Dr. González is a physician who practices medicine in Puerto Rico and is DAC's President and majority shareholder. His wife is co-Plaintiff Mrs. Roig.   Although not parties to the final award or the present claim, other relevant players in the history of this case are Dr. Alfredo Ramírez-Justiniano ("Dr. Ramírez") and Dr. José Colón-Rivera ("Dr. Colón"), physicians who practice medicine in Puerto Rico and were minority shareholders of DAC.   Defendant RMS is a Delaware corporation that provides physician practices with management and administrative support services for the operation of vascular access centers owned by those practices.

In August, 2007, RMS, DAC and Drs. González, Ramírez and Colón entered into a Management Services Agreement ("MSA" or the "agreement") with respect to the

Dialysis Access Center, PLLC., et al., v. RMS Lifeline, Inc.,
Civil No. 13-1796 (PAD)
Report and Recommendation
Page 6

_____

development, operation and management of a vascular access center to provide medical

services for end-stage renal disease patients in Mayagüez, Puerto Rico.    On or about the

same date, RMS and DAC also entered a Development Agreement, Equipment Lease

Agreement and a Working Capital Funding Note in RMS's favor.

Relevant to the controversy before the Court are two (2) clauses contained in the

MSA.    Section 12.1 is a notice, cure and termination clause, which called for notice of a

breach, an opportunity to cure the breach, and for termination of the MSA by the non-

breaching party if cure was not effected within a certain period of time after notice was

given.    Section 13.9 is a dispute resolution clause, which called for good faith in the

resolution of any dispute arising under the agreement.    If the parties were unable to

agree on a solution to the disputed matter, the parties would submit to binding

arbitration.

The parties argue over who breached the agreement first.    For purposes of this

Report and Recommendation, the Court will simply state that on March 3, 2010 and

pursuant to the MSA, RMS activated clause 13.9, and filed a Demand for Arbitration

against DAC, Drs. González, Ramírez and Colón alleging a variety of breaches by

Respondents.    A month later, Plaintiffs herein (which also included Mrs. Roig, who was

not an original respondent to the arbitration demand), filed a complaint against RMS in

the Puerto Rico Court of First Instance in Mayagüez.    They averred that the MSA was

null and void due to fraud, and asked for damages pursuant to Puerto Rico law.    Based

on diversity jurisdiction, RMS timely removed the case here, together with a motion to

dismiss and compel arbitration under the MSA (Civil No. 10-1382 (GAG)).    Faced with no opposition to the petition to arbitrate, the Court entered Judgment and ordered the parties to arbitrate the disputes between them.    RMS then commenced arbitration proceedings pursuant to the terms of the MSA.

Several days after the District Court entered Judgment dismissing the case; Plaintiffs then appeared and filed a motion to alter judgment, arguing against arbitration and proffering a variety of defenses.    In sum, Plaintiffs opposed the remand here and argued for a remand back to state court.    Plaintiffs also petitioned, via separate motion, for a stay of the arbitration already commenced by RMS.

The District Court was unconvinced by their arguments and held that abstention was unwarranted and that Plaintiffs had not made a showing that the removal made by RMS to this Court based on diversity of citizenship was improper.    The District Court therefore upheld its original order compelling the parties to arbitrate.    Unhappy with said ruling, DAC, González and Roig appealed.    Specifically, they appealed the dismissal of their request for nullification of the contract (averring that the Court, not the arbitrator, should decide that issue) and the Court's order compelling arbitration.

In an Opinion issued on March 30, 2011, the Court of Appeals for the First Circuit framed the issues before it as follows: "Appellants aver that the court and not an arbitrator should resolve their dispute with RMS over the validity of a certain management services agreement, which Appellants wish to have declared null because RMS allegedly committed fraud in the formation and performance of the contractual obligations set

forth therein. Appellants challenge both the scope and validity of their arbitration agreement with RMS.   After careful consideration, we conclude that Appellants' claims are encompassed within the parties' arbitration agreement and that the agreement is valid, pursuant to Section 2 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 2. Accordingly, we affirm the district court's judgment dismissing this case and compelling arbitration."   Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 371 (1st Cir. 2011).

Although the Court of Appeals for the First Circuit issued an extensive Opinion, it ultimately only decided three (3) basic things, to wit: 1) the arbitration agreement between the parties was valid; 2) Plaintiffs' claims regarding the MSA's nullity could (and should) be determined by the arbitrator;[2]  and 3) the District Court correctly ordered the parties to arbitrate. Notwithstanding Plaintiffs' assertion to the contrary, nothing else was decided by the Court of Appeals for the First Circuit.[3]

After RMS prevailed in the arbitration proceeding, which will be discussed in more detail below, it filed a motion to re-open the case to enforce the final arbitration award in the original case, Civil No. 10-1382 (GAG).   The District Judge ruled that the Court did

---

2  Regarding this particular claim, the Opinion stated: "Appellants factually allege that although the MSA exists, it should be annulled, because RMS allegedly committed fraud during its formation.   Our task here is not to resolve this dispute, but rather to determine whether it is arbitrable under the Arbitration Clause".   Id. at 379.   The First Circuit concluded that the issue was arbitrable.

3  Repeatedly, Plaintiffs state that the arbitrator "chose to ignore the First Circuit's mandate regarding the arbitrable issues" and that he impermissibly focused instead on the claims presented by RMS in the First Amended Demand for Arbitration.   (Docket No. 21, p. 11).   Again, the issues before the First Circuit were only limited to whether the agreement to arbitrate was valid and consequently, what issues were arbitrable.   The arbitrator focused on the claims presented in RMS' demand because that was the precise relief requested of him by the party seeking such relief (RMS). The Court finds the arbitrator did not "disdain" Plaintiffs' claims, as Plaintiffs posit, and even though he did state that the counterclaim was not too "structured", the Award clearly shows he considered all Plaintiffs' claims, as will be discussed more thoroughly below.

not retain jurisdiction to entertain RMS' demand, and stated that the filing of a new case was the proper method to enforce any arbitration award.    Instead, DAC filed the present case to vacate that award.

**B. The Arbitration.**

Claimant in the arbitration proceeding was Defendant herein RMS; the Respondents were co-Plaintiffs DAC, Dr. González, Dr. Ramírez and Dr. Colón.    In response to the amended arbitration demand filed by RMS, DAC, Dr. González and Mrs. Roig filed a counterclaim against RMS, and a cross-claim against Dr. Ramírez, his wife and conjugal partnership. The claims raised by each, as found by the arbitrator, were as follows:

A. RMS against DAC, Drs. Ramírez, González and Colón (original demand for arbitration)

1. Breach of contract and collection of money against DAC;

2. Breach of contract and collection of money against Drs. González, Ramírez and Colón;[4]

3. Declaratory judgment upholding the termination of the MSA against DAC and Drs. González, Ramírez and Colón;

4. Accounting as to DAC and Drs. González, Ramírez and Colón;

5. Fraud/ "dolo" against DAC and Dr. González;

4  During the life of the arbitration procedure, RMS settled with Drs. Ramírez and Colón.    The arbitrator's Final Award therefore did not include them as parties.

6.   Tortious interference against DAC and Dr. González.

B.   DAC, Dr. González and Mrs. Roig against RMS (counterclaim)

1. Premature and improper termination of the MSA by RMS;

2. Fraudulent inducement by RMS so DAC and Dr. González would enter
into the MSA;

3. Breach of the MSA by RMS through its own actions with respect to the
dialysis center, and damages flowing therefrom.

C.   DAC against Dr. Ramírez and wife (crossclaim)

1.   Breach of fiduciary duty to DAC by failing to refer patients to the center
subsequent to the parties' entry into the MSA.

The Arbitrator initially found that all of the claims brought by all parties were
subject to arbitration pursuant to the arbitration clause contained in Section 13.9 of the
MSA.   On July 23, 2013, and after several arbitration sessions held throughout the span
of several months, arbitrator Martin B. Goldberg, Esq. entered his Final Award, as
follows:

1.   In favor of RMS and against DAC and Dr. González for breach of contract and
damages.   The arbitrator awarded RMS the total amount of $1,200,737.44,
plus accrued interest at the prime rate. Out of this $1,200,737.44 amount, he
found $300,000 was attributable to DAC and Dr. González's "dolo" liability
with respect to amounts improperly withdrawn and diverted from DAC's bank
account.

2.  An award for RMS the amount of $129,287.04 in accrued interest due on the amount of $1,200,737.44 at the prime rate of 3.25% from April 1, 2010 through July 23, 2013, the date of the Final Award.

3.  As to the counterclaim against RMS, the arbitrator found in favor of RMS and against Plaintiffs.

4.  As to DAC's crossclaim against Dr. Ramírez, the arbitrator found in favor of Dr. Ramírez and against DAC.

5.  Finally, as the prevailing party in the arbitration, the arbitrator found that RMS was entitled to recover all of its costs and expenses of the arbitration, including, without limitation, filing fee and expenses, the fees and expenses of the Arbitrator, and its reasonable attorney's fees and costs, pursuant to Rules 6.06 and 7.01 of the AHLA Rules and Section 13.9 of the MSA, Section C(6) of the Development Agreement, Section 22 of the Equipment Lease Agreement and page 3 of the Working Capital Funding Note.   It awarded costs and expenses of the arbitration totaling $212,345.70 and attorney's fees totaling $426,698.50.42.   The total award was for $1,969,068.68.

## LEGAL ANALYSIS

Unhappy with the outcome of the arbitration, Plaintiffs now move the Court to vacate the arbitration award under a variety of theories.   Citing to the talismanic language necessary to vacate an award, they posit time and again that the award must be vacated.   However, the mere recitation of the required language is insufficient to

overcome the steep hurdle Plaintiffs face in the instant case.

Plaintiffs first argue that the Court must vacate the award because of arbitrator misconduct in evaluating the evidence regarding the contract formation, novation, and breach, as well as "dolo" by RMS.   In line with this, Plaintiffs state that the arbitrator exceeded his powers or so imperfectly executed them, that he misapplied Puerto Rico's parol evidence rule in excluding certain extrinsic evidence.   Finally, Plaintiffs contend that the arbitrator exceeded his powers or so imperfectly executed them, that he disregarded Puerto Rico's law on the damages award.   In the alternative, Plaintiffs move for a modification of the arbitration award.   The Court examines each in turn, and finds Plaintiffs' arguments without merit.

## A. Misconduct in refusing to hear evidence regarding the contract formation, novation, and breach, and "dolo".

Plaintiffs first claim that the arbitrator failed to consider relevant evidence as to the issue of "dolo"[5]  on behalf of RMS in the formation of the contract, the alleged initial contractual breach by RMS, and the subsequent contractual novation of the MSA due to RMS' subsequent acts.   Plaintiffs aver that Defendant acted with "dolo" and misled them in the formation of the contract, whereby they were hoodwinked into signing the agreement, which RMS later failed to comply with.   Plaintiffs claim that the contractual

---

5 "Dolo" is defined by Puerto Rico law as "when by words or insidious machinations on the part of one of the contracting parties the other is induced to execute a contract which without them he would not have made."   P.R. Laws Ann. tit. 31, § 3408.   Puerto Rico law distinguishes between pre-contractual "dolo" occurring at the contracting stage (i.e., during the formation of the contract) and post-contractual "dolo" occurring during the course of the performance of the contract.   See Colón v. Promo Motor Imps., Inc., 144 P.R. Dec. 659, 668 (1997) (official translation).   Plaintiffs are alleging pre-contractual "dolo" occurred here, specifically, during the formation of the contract.

relationship that emerged post-MSA signing, in which RMS performed differing duties than those stated in the MSA, served as a novation to the signed contract by the parties.

The arbitrator issued an extensive, thirty one (31) page award where he thoroughly discussed the issues raised herein by Plaintiffs.    Because Plaintiffs had filed a motion for summary judgment alleging breach by RMS and unjust termination of the contract, the arbitrator first analyzed the termination clause in question.    Plaintiffs' contention was that Defendant had to first negotiate in good faith pursuant to Section 13.9 in order to attempt resolve the pending issues between them as a prerequisite to invoking the termination clause.

The arbitrator disagreed.    The arbitrator found that section 12.1 "unambiguously provides that either party has the right to terminate the MSA if a material breach thereof has not been cured within sixty (60) days after notification of such breach has been provided by the non-breaching party.    Thus, Section 12.1's sixty (60) day notice and opportunity to cure period is the only precondition to termination for a material breach set forth in the MSA. The MSA contains no provision explicitly stating that compliance with Section 13.9, or any other MSA section, is a precondition to a party's termination under Section 12.1". Award, p. 7.    Thus, the arbitrator was correct in flatly rejecting Plaintiff's assertion that good faith negotiating was necessary before RMS terminated the agreement, and in so doing, also found that RMS had not incurred in any such breach.

Plaintiffs also wanted the arbitrator to consider extrinsic evidence regarding alleged "dolo" by RMS in the contract formation and alleged contractual novation.    He

concluded that under Puerto Rico law, he was forbidden from using parol evidence of RMS's pre and post alleged conduct.    The arbitrator is correct.    See P.R. Laws Ann. tit. 31, § 3471 (1991) (Article 1233 of the Civil Code) ("If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed...."); Executive Leasing Corp. v. Banco Popular del P.R., 48 F.3d 66 (1st Cir. 1995) (citing P.R. Laws Ann. tit. 32, App. IV, R. 69(B) (1983), Parol Evidence Rule: evidence extrinsic to an oral or written agreement is inadmissible where "all the terms and conditions constituting the true and final intention of the parties have been included").

In addition, as has been clearly established, under Puerto Rico law, an agreement is "clear" when it can "'be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation....' " Catullo v. Metzner, 834 F.2d 1075, 1079 (1st Cir.1987) (quoting Heirs of Ramírez v. Superior Court, 81 P.R.R. 347, 351 (1959)); and Vulcan Tools of Puerto Rico v. Makita USA, Inc., 23 F.3d 564, 567 (1st Cir.1994) ( "[w]hen an agreement leaves no doubt as to the intent of the parties, a court should not look beyond the literal terms of the contract").

Plaintiffs here have not alleged that the agreement was somehow unclear, yet they posit that the arbitrator erred in only considering the terms of the contract and failing to consider the extrinsic evidence.    Plaintiffs forget, however, that in order to consider parol evidence to determine whether a variation or modification of the terms of a contract occurred, *the Court must first find the relevant terms of the agreement unclear*.    That

requirement was not met here, thus, the arbitrator correctly went no further.    See Vulcan, 23 F.3d at 564 (because the contractual term "non-exclusive" is clear and unambiguous, there is "no need to dwell on" extrinsic evidence of the supplier's alleged promise to limit the number of its distributors); Ballester Hermanos, Inc. v. Campbell Soup Co., 797 F.Supp. 103, 108 n. 4 (D.P.R.1992) (under Puerto Rico's Civil Code and parol evidence rule, parties may resort to extrinsic evidence of circumstances surrounding the document "to assist in the interpretation of an apparent conflict in the written text "); Nike Int'l Ltd. v. Athletic Sales, Inc., 689 F.Supp. 1235 (D.P.R.1988) (under Article 1233 of the Civil Code, intent of the parties "is to be gleaned first from the literal terms of the contract and then, if necessary, from the circumstances surrounding its execution"). Plaintiffs here have failed to allege, much less demonstrate, that the contractual terms at issue were somehow unclear in order to warrant the consideration of extrinsic evidence. In fact, like the arbitrator found, the Court finds the MSA to be quite clear and unambiguous.

The arbitrator, however, went further, and provided seven (7) different reasons as to why, even if Plaintiff's extrinsic evidence were considered, it would not affect his decision.    In a separate section, the arbitrator then explained precisely why he believed no "dolo" had been effected by RMS during the formation of the contract, mainly, because "RMS and DAC/Dr. González are sophisticated parties and that the MSA (including Section 3.1) was negotiated with the assistance of counsel or with the opportunity to seek such assistance", and the credibility given to the witnesses during the arbitration.

(Award, pp. 12 and 22).

It is not the province of this Court, but rather of the arbitrator, to determine the weight, relevancy and credibility of evidence presented to him. This Court may not stand in the place of the arbitrator for this task, or substitute its own judgment because "the factual findings of the arbitrator are not subject to judicial challenge." Georgia-Pac. Corp. v. Local 27, United Paperworkers Int'l Union, 864 F.2d 940, 945 (1st Cir. 1988). Therefore, that the arbitrator made a credibility finding or reached a conclusion different from that which might have been made by this Court are not valid grounds for interfering with an award. Asociación De Empleados del Estado Libre Asociado de Puerto Rico v. Unión Internacional de Trabajadores de la Industria De Automóviles, Aeroespacio e Implementos Agrícolas, No. CIV. 07-1816 (GAG), 2008 WL 2551300, at *5 (D.P.R. June 23, 2008) (The court may not interfere with the award even if it believes that the arbitrator erred in assessing a witness's credibility).

Simply put, Plaintiffs have dedicated their brief to attacking the evidence presented and the arbitrator's conclusions based on that evidence. Those are not permissible reasons to vacate an arbitral award. Plaintiffs have, thus, failed to establish the prerequisite basis for their petition to vacate.

Regarding the counterclaim and crossclaim, Plaintiffs fare no better. Again, the Award clearly demonstrates that the arbitrator reviewed the evidence, heard testimony and, regarding the improper termination claim, found ample evidence that RMS "made good faith pre-termination efforts to amicably resolve this dispute with DAC and Dr.

González, including but not limited to engaging in verbal and written correspondence with them and delaying the termination of the MSA."   (Award, p. 21).

Plaintiffs further argue that the arbitrator "exceeded his powers by discarding RMS's own admission...."   (Docket No. 21, p. 13).   As previously discussed, however, that is exactly the arbitrator's role: to evaluate evidence and give it the probative value he sees fit.   The fact that Plaintiffs disagree with his conclusions on the evidence they presented is not grounds to vacate the arbitration award.

Regarding the cross-claim, the arbitrator found ample support for his dismissal of the claim in the clear language of the MSA, which indicated that it did not require the referral of patients to the center.[6]   Thus, his conclusion that "Dr. Ramírez did not breach any fiduciary duty toward DAC due to any failure to refer patients to the Access Center" was plainly supported by the MSA's clear terms.   See Award, p. 23; MSA, § 2.3.   Again, in the absence of exceptional circumstances, which the Court finds are not present here, an award may not be overturned based on the arbitrator's determination of relevancy or persuasiveness of evidence submitted by the parties.   Hoteles Condado Beach, La Concha and Convention Center v. Unión de Tronquistas Local 901, 763 F.3d 24 (1st Cir. 1985).   That task is for the arbitrator alone, and the Court cannot disturb the findings here.

Under well-established standards of review of arbitration awards, a federal court may not overrule an arbitrator's decision simply because the Court believes its own

---

6 Plaintiffs claim that testimony to the contrary was presented during the arbitration.   Again, consideration of this testimony and reaching a conclusion as to its relevance and applicability is ultimately the responsibility of the arbitrator.

interpretation of the contract "would be a better one."    W.R. Grace & Co. v. Local Union, 759, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182 (1983) (*citing* United Steelworkers, 363 U.S. at 596, 80 S.Ct. at 1360).

Finding the arbitrator's reasoning to be well supported by the record,[7] and since Plaintiffs have been unable to pinpoint the applicability of any of the limited instances where this Court may overturn an arbitration award, the Court recommends that Plaintiffs' "Complaint to Vacate and/or Modify Arbitration Award" (Docket No. 1) and the "Brief in Support of Plaintiffs' Complaint to Vacate and/or Modify the Arbitration Award" (Docket No. 21) be DENIED.

**B. Damages.**

Similarly, Plaintiffs spend an inordinate amount of time discussing a variety of mistakes by the arbitrator in their challenge of the arbitrator's apportionment of the damages.    Yet again, Plaintiffs fail to cite any support for their contention based on the guidelines that this Court must follow to vacate, or in the alternative, revise an arbitration award.

Although Plaintiffs cast the grounds to vacate as manifest disregard of the law, as before, they are actually complaining of factual and legal errors.    Plaintiffs challenge the arbitrator's rationale for his decisions, conclusions and damages apportionment, yet they point to nothing in the record to establish that the arbitrator deliberately disregarded

---

7  See Thomas Díaz, Inc. v. Colombina, S.A., 831 F.Supp.2d 528, 537 (D.P.R. 2011) (upholding arbitration award because arbitrator's reasoning was "plausible and supported by the record, and his findings were founded on valid principles").

what he knew to be the law when he came to his conclusions.   Having found for Defendant, the arbitrator provided a detailed description of the computation of damages, and how he arrived at them.   As the Award clearly evidences, the arbitrator relied upon the evidence presented and the clear and plain language of the MSA, as applied to the facts as he found them, and reached his conclusions.

Plaintiffs claim that attorney's fees and prejudgment interest only apply under Puerto Rico law to an obstinate party.   Yet, this argument is inapplicable here insofar as the MSA, which all parties signed and were bound by, specifically grants attorney's fees, as well as costs to the prevailing party in the arbitration proceeding.   (See Docket No. 1-4, section 13.9).   Additionally, the American Health Lawyers Association's applicable rules, as well as the Development Agreement, the Equipment Lease Agreement and the Working Capital Funding Note signed between the parties all provide for these damages.

When the parties bound themselves to the terms of the MSA, they agreed to resolve disputes through the arbitration process, and thus granted the arbitrator the authority to make findings of fact, evaluate the law and abide by the arbitrator's conclusions.   See E.g., Ramos-Santiago v. United Parcel Serv., 524 F.3d 120, 123 (1st Cir. 2008) ("[w]hen parties include an arbitration clause in their [collective bargaining agreement], they are choosing to forego a number of legal options in favor of having their disputes regarding the construction of that contract settled by an arbitrator.   As this was the bargain the parties struck, they are bound by the arbitrator's decision").   Such is the case here, no matter how distasteful the result is for Plaintiffs.

In sum, the Court cannot conduct its own analysis of the law to determine whether the arbitrator ruled correctly.    Poland Spring Corp. v. United Food & Commercial Int'l Union, 314 F.3d 29, 33 (1st Cir. 2002) ("We do not sit as a court of appeal to hear claims of factual or legal error...").    As applied here, the Court finds that it cannot intervene with the Award because Plaintiffs have failed to establish any misbehavior on the arbitrator's part, that his actions were in excess of his arbitral powers, or that his actions or the Award showed manifest disregard for the law.    Thus, as the Court cannot make a determination as to whether it would have reached the same conclusion, it instead finds that the arbitrator reasonably construed the pertinent clauses of the MSA and reasonably applied to them to the facts and evidence presented here.    See United Paperworkers Int'l Union, 484 U.S. at 38 (if the arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority" the court may not overturn the decision).

In light of the above analysis, the undersigned recommends that Plaintiffs' "Complaint To Vacate and/or Modify Arbitration Award" as well as their "Brief in Support of Plaintiffs' Complaint to vacate and/or Modify Arbitration Award" (Docket Nos. 1 and 21) be both DENIED, and the arbitration award be AFFIRMED.

## CONCLUSION

In view of the foregoing, it is recommended that Plaintiff's "Complaint To Vacate and/or Modify Arbitration Award" as well as their "Brief in Support of Plaintiffs' Complaint to vacate and/or Modify Arbitration Award" (Docket Nos. 1 and 21) be

<u>Dialysis Access Center, PLLC., et al., v. RMS Lifeline, Inc.,</u>
Civil No. 13-1796 (PAD)
Report and Recommendation
Page 21

_____

DENIED, and the arbitration award be AFFIRMED.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. <u>See</u> Amended Local Rules.   Failure to file same within the specified time waives the right to appeal this order.   <u>Henley Drilling Co. v. McGee</u>, 36 F.3d 143, 150–151(1st Cir. 1994); <u>United States v. Valencia</u>, 792 F.2d 4 (1st Cir. 1986) and <u>Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.</u>, 840 F.2d 985, 991 (1st Cir. 1988).

In San Juan, Puerto Rico, on this 31st day of May, 2017.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE